```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA


RICHARD POPLAWSKI             :        CIVIL ACTION
                              :
          v.                  :
                              :
SERGEANT P. GREEN             :        NO. 22-4483
```

MEMORANDUM

Bartle, J.                                          November 7, 2023

Plaintiff Richard Poplawski, an inmate at the Pennsylvania Correctional Institution at Phoenix and proceeding pro se, brings this action against defendant Sergeant P. Green for one count of retaliation pursuant to 42 U.S.C. § 1983. He asserts that Sergeant Green, a correctional officer, retaliated against him for filing a grievance by using profanity, issuing verbal threats, denying him recreation, and arranging a cell search. Before the court is Sergeant Green's motion for summary judgment.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a

reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  The court views the facts and draw all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.  See Anderson, 477 U.S. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.  In addition, Rule 56(e)(2) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

II

The facts are taken in the light most favorable to Poplawski as the nonmoving party.  On March 17, 2022, Poplawski filed a grievance with prison officials criticizing new yard time procedures implemented by "the quad 4 sergeant."  "Yard time" is the colloquial term used by inmates and correctional staff for recreational time in the prison yard, which inmates are permitted up to three times per day.  Poplawski later

learned that "the quad 4 sergeant" was Sergeant P. Green but did not amend the grievance to include her name. On April 6, 2022, Poplawski's grievance was dismissed as frivolous. No hearing was held and Poplawski did not take an administrative appeal.[1]

On the morning of April 4, 2022, while his grievance was pending, Poplawski and other inmates in his block were passing through metal detectors for their morning yard time. About six or seven correctional officers were conducting the screening. Inmates are required to carry their identification cards and present them to officers on request. That morning, Poplawski had attached his ID card to the front of his cap.

After Poplawski had passed through the metal detectors, Sergeant Green called to him, "Poplawski! Stop! You gotta have your ID. Go back." Poplawski turned around and pointed to his cap. His ID was "conspicuously visible." Sergeant Green responded, "Boy. If you don't get out of my face and go back to the fuckin' block, I'm gonna spray your ass [with oleoresin capsicum spray]." (alteration by Poplawski).

---

1.  Inmates at correctional institutes in the Commonwealth of Pennsylvania have access to a formal grievance procedure to resolve problems arising during their incarceration. Pa. Dep't of Corrections, Policy Statement No. DC-ADM 804, <u>Inmate Grievance System</u> (2015). Grievances are submitted by inmates in writing and decided by an assigned grievance officer. <u>Id.</u> at 1-1 to 1-3, 1-7. An inmate may appeal a grievance twice. <u>Id.</u> at 1-4 to 1-5, 2-7.

Poplawski left the area and spent that morning's recreation time in the law library.

Two inmates waiting to pass through the metal detectors heard the officers discuss the incident as Poplawski walked back. Francis Harris heard an unnamed officer ask Sergeant Green, "Why did you send him back? His ID was on his hat." According to Harris, Sergeant Green responded, "That motherfucker filed some nut-ass paper on me." Richard Boxley, another inmate, heard Sergeant Green say that she was "tired of Poplawski's grievances."

About one to three days after this incident, Officer Knox and an unnamed officer conducted a search of Poplawski's cell.[2] Officer Knox waited outside with Poplawski while the unnamed officer looked through Poplawski's bedding, magazines, papers, and food containers. This latter officer left Poplawski's personal property "needlessly disheveled." As the unnamed officer exited the cell, Poplawski heard him say something to the effect of, "Green says hi," in a thick African accent.

On April 18, 2022, Poplawski filed a grievance against Sergeant Green. The grievance was dismissed as frivolous and

---

2. Sergeant Green disputes that any cell search occurred. She maintains that a survey of Pennsylvania Department of Corrections records from April 5, 2023, shows no evidence of a cell search. For present purposes, the court will accept as true Poplawski's version of the facts.

Poplawski's subsequent appeal was denied. Having exhausted his administrative remedies,[3] Poplawski filed the instant action on November 2, 2022.

### III

Poplawski contends that Sergeant Green retaliated against him for filing a grievance in violation of 42 U.S.C. § 1983. Section 1983 makes liable any person who, acting under color of state law, deprives another "of any rights, privileges, or immunities secured by the Constitution and laws." Id. Poplawski maintains that correctional staff retaliated against him for exercising his right under the First Amendment to file a grievance.

To establish a prima facia claim of retaliation, Poplawski must prove by a preponderance of the evidence that: (1) he was engaged in conduct protected by the First Amendment; (2) he suffered an adverse action at the hands of prison officials "sufficient to deter a person of ordinary firmness from exercising his constitutional rights;" and (3) there was "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn,

---

3. Sergeant Green argues that Poplawski did not exhaust his administrative remedies because he never alleged a retaliatory cell search in the grievance process. However, in his appeal to the Superintendent, Poplawski wrote that he "was subject to a suspicious 'random' cell search the very next day." (emphasis in original).

318 F.3d 523, 530 (3d Cir. 2003) (internal quotations and citations omitted).  The burden then shifts to Sergeant Green to prove that she would have taken the same actions even if Poplawski were not engaging in protected conduct.  Rauser v. Horn, 241 F.3d 330, 334 (2001).

Here, it is not disputed that filing a grievance is constitutionally protected conduct.  Accordingly, the court first considers whether Poplawski has established a sufficiently adverse action.  Poplawski alleges four retaliatory acts: (a) using profanity and a racially charged term, (b) threatening physical force, (c) denying recreation, and (d) arranging a retaliatory cell search.

To state an actionable claim under Section 1983, the adverse action "need not be great" but "must be more than de minimis."  McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006).  Here, none of the four alleged retaliatory acts was sufficiently severe to give rise to retaliation.

First, Sergeant Green's use of profanity and the term "Boy" on March 4, 2022 was at most one instance of mere verbal harassment, which does not constitute retaliation.  See Burgos v. Canino, 358 F. App'x 302, 306 (3d. Cir. 2009).  Verbal harassment or threats, standing alone, do not constitute retaliation.  See, e.g., id.; Marten v. Hunt, 479 F. App'x 436,

-6-

439 (3d Cir. 2012); Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973).

Second, Sergeant Green's mere threat to spray Poplawski is de minimis because she did not accompany the threat with some escalating action, such as brandishing the canister of pepper spray. E.g., Bailey v. Digby, No. CV 3:20-0762, 2022 WL 4537879 at *8 (M.D. Pa. Sept. 28, 2022).

Third, Sergeant Green denied Poplawski only one period of yard time. See Burgos, 358 F. App'x at 307. Denial of one period of yard time is too de minimis to constitute retaliation because the inmate otherwise has "ample opportunity to exercise." See id. Indeed, in Coit v. Garman, the Court held that the loss of even three periods of yard time was de minimis. No. 1:17-CV-1438, 2019 WL 2612703 at *9 (M.D. Pa. June 26, 2019), aff'd, 812 F. App'x 83 (3d Cir. 2020).

Fourth, even assuming that Sergeant Green orchestrated the cell search, this was a single instance of a routine and appropriate practice in a correctional institution. See Hudson v. Palmer, 468 U.S. 517, 529 (1984); Sims v. Vaughn, 189 F. App'x 139, 141 (3d Cir. 2006). Random cell searches "are valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries." Hudson, 468 U.S. at 529. A single cell search is a "generally acceptable prison practice" that does not constitute

retaliation.  See Sims, 189 F. App'x at 141;  id.  The fact that Poplawski's personal items were "disheveled" is quite different from correctional staff seizing personal property and does not amount to retaliation.  See Humphrey v. Sec'y Pennsylvania Dep't of Corr., 712 F.Appx. 122, 125 (3d Cir. 2017).

Furthermore, this court does not find that the cumulative impact of one harassing comment, one threat, one denial of yard time, and one cell search would deter a person of ordinary firmness from filing grievances.  See Mitchell, 318 F.3d at 530.  Indeed, there is evidence on the record that Poplawski has filed and appealed dozens of grievances since this incident.  Because Poplawski failed to establish an adverse action, his prima facia retaliation claim fails, and this court need not consider the third element of causation.

IV.

Sergeant Green makes a second argument that she is subject to qualified immunity.  In Saucier v. Katz, the Supreme Court explained that "[q]ualified immunity is an entitlement not to stand trial or face the other burdens of litigation," and not merely a defense to liability.  533 U.S. 194, 200-201 (2001).  The Court set forth a two-pronged test for a determination of qualified immunity: (a) whether a constitutional or federal right has been violated; and (b) whether that right was "clearly established."  Id. at 201.  Courts are "permitted to exercise

their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009)

This court began the inquiry at the first step and determined that Poplawski's constitutional right to file a grievance was not violated.  The court need not consider the second prong of the Saucier test.  See 533 U.S. 201.

Accordingly, the motion of defendant Sergeant P. Green for summary judgment will be granted.